Coven, J.
Nearly three years after the filing of a small claims action, the transfer of the action to the regular civil docket, two days of trial, and 445 hours of logged attorney tíme, John Stamatakis’ (“Stamatakis”) claim that Metropolitan Property & Casualty Ins. Co. (“Metropolitan”) breached its contract by tendering only $50.00 for each day of vehicle storage instead of the $70.00 (later increased to $75.00) charged by New England Body Works, Inc. (“NEBW’) and undervaluing the total-loss value of his vehicle was adjudicated. The jury awarded $3,726.00 in damages to Stamatakis. A total of $94,092.50 in legal fees was awarded by the trial judge. Attorney’s fees in the amount of $57,460.00 were awarded to Stamatakis on the basis that G.L.c. 218, §23 requires such an award when a small claims case is transferred to the regular civil docket at the request of an insurer and judgment is recovered by the opposing party. Legal fees of $36,632.50 were awarded to Metropolitan on its G.L.c. 93A cross claim against NEBW, the repair shop where Stamatakis had driven his motor vehicle for repair following the accident, for NEBW’s charges for unnecessary services. This case, now in its seventh year, is before us on Metropolitan’s appeal and NEBWs cross appeal.[2]
*175 Metropolitan argues on its appeal that the trial court erred: (1) by not disqualifying Stamatakis’ counsel, who also represented NEBW; (2) by striking the word “Joint” from the motion to transfer the small claims filing to the regular civil docket; and (3) in awarding legal fees to Stamatakis when counsel for Stamatakis, who also represented NEBW, did not delineate between fees charged to the prosecution of Stamatakis’ case and those associated with NEBWs defense. NEBW, in its appeal, argues that there existed no basis for a finding that it had committed an unfair and deceptive act in violation of G.L.C. 93A, §11, and, in any event, that Metropolitan did not suffer the loss of any money.
We begin with the relevant facts. On December 2,2003, Stamatakis, while operating his 1992 Jack Nicldaus Edition Lincoln Town Car, which he had purchased in 1998 for approximately $12,000.00, lost control of the vehicle as a result of icy road conditions while traveling along Route 1 from Medford to Danvers, Massachusetts. The vehicle “sp[u]n[] out,” causing damage to the front and rear, and came to rest facing oncoming traffic. Despite the “really loose” steering wheel condition caused by the accident, Stamatakis was able to turn the vehicle around and drive it to NEBW, a repair shop that Stamatakis had used in the past. In good weather, the trip is a twenty minute drive. On cross-examination, Stamatakis testified that the trip took approximately five hours on the date in question.[3] NEBWs president told Stamatakis to report the accident to Metropolitan and to inform the insurer where the vehicle was located. On December 8, 2003, Metropolitan sent an appraiser to assess the damage to the vehicle. The appraiser determined that the vehicle was a total loss.
Stamatakis was notified of this total-loss determination by letter dated December 10,2003. The letter also informed Stamatakis that Metropolitan would pay $50.00 per day for “reasonable storage fees” for the period from December 2, 2003 through December 12,2003. In a December 18,2003 letter, Metropolitan notified Stamatakis that it had determined the value of his vehicle to be $3,400.00 and, after certain deductions, that it would pay him $2,660.00 as the value of his loss.
Stamatakis disagreed with the total-loss value offered by Metropolitan. Based on his review of the Blue Book stated value,[4] Stamatakis viewed the actual value of his vehicle to be between $5,000.00 and $6,000.00. Stamatakis also disagreed with Metropolitan’s decision to pay only a $50.00 per day storage fee. Stamatakis was charged a storage fee of $70.00 per day by NEBW during this time period.[5]
In addition to the disagreements concerning the actual value of the vehicle and the daily storage fee, Stamatakis also sought the recovery of other fees charged by *176 NEBW. They included: an administrative fee ($150.00), yard cleanup fee ($25.00), diagnostic fee ($88.00), winch in fee ($60.00), winch out fee ($60.00), and removal of optional equipment fee ($250.00).[6] NEBW’s president testified as to the reasons for those ancillary charges. Of particular relevance, because NEBW has challenged the sufficiency of Metropolitan’s G.L.c. 93A evidence, are the winch in fee and winch out fee. According to NEBW’s president, Stamatakis’ vehicle was not “driveable, and it was extremely sloppy” because “the steering wheel had about maybe 50% of turn, without the wheels actually turning.” As a result of the operating condition, heavy equipment, i.e., a Bobcat or forklift, was used to position Stamatakis’ vehicle “in an area designated” for the vehicle. The cost associated with this service is charged as a winch in fee. NEBW’s president identified the winch out fee as a fee charged for positioning the vehicle “out on the street, so that their vehicle can pick it up safely, without causing an injury or additional damage to the vehicle.”
Apart from having Stamatakis sign a repair order that authorized NEBW to “negotiate on [Stamatakis’] behalf,” and NEBWs being present at the appraisal, NEBW had no other relationship with Metropolitan. NEBW did not contact or correspond with Metropolitan. NEBW’s president acknowledged that, pursuant to G.L.c. 255, §25, NEBW had a possessory garageman’s lien on Stamatakis’ vehicle. He further agreed that, while he had no contract with Metropolitan for the charges billed, he was aware that Stamatakis would turn to Metropolitan to pay the charges.
1. We begin with the issue of disqualification of counsel sought by Metropolitan for counsel’s representation of both Stamatakis and NEBW. Rule 1.7 of the Massachusetts Rules of Professional Conduct states, in part:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.
As there was no conflict between the legal positions and interests of the two parties, there was no conflict in their representation by the same attorney. Stamatakis’ claim, to the extent that it touched on NEBWs defense, was in complete alignment. Stamatakis stated that he was of the belief that NEBWs daily storage fees were reasonable. Stamatakis sought contract damages for the daily storage fees charged by NEBW at NEBWs rate. NEBW defended against Metropolitan’s claim that its daily storage fee charge amounted to an unfair business practice by asserting that the *177 daily fee was reasonable. The only challenge to the reasonableness of the storage fees was made by Metropolitan.
2. Metropolitan next argues that the judge improperly struck the word “Joint” from Metropolitan’s motion to transfer the small claims case filing to the regular civil docket, and erred in awarding G.L.c. 218, §23 attorney’s fees that did not delineate between the legal services provided in Stamatakis’ case-in-chief and in NEBW’s defense.
Section §23 of G.L.c. 218 provides, in relevant part:
In any action for property damage caused by a motor vehicle where the action is transferred to the regular civil docket in the district court department by the insurer and the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto, costs and reasonable attorney’s fees.
The statute requires an award of attorney’s fees when, as in this case, the insurer requests the transfer of a small claims action to the regular civil docket, and the opposing party then recovers a judgment. Metropolitan’s motion to transfer Stamatakis’ small claims case to the regular civil docket was initially captioned by Metropolitan as a “Joint” motion by the parties. The trial court correctly struck the word “Joint” from the motion to reflect that while Stamatakis assented to (or did not oppose) Metropolitan’s motion, he did not participate in its filing. Metropolitan contends that the court lacked authority to correct the record because Stamatakis did not object when the motion was filed. It also argues that, because Stamatakis was seeking contract damages and did not proceed with a claim for property damage caused by a motor vehicle, §23 is inapplicable in the circumstances even if its motion was reformed to reflect assent. We disagree with both assertions.
‘There is an inherent and necessary power in a court of justice acting on the motion of an interested party or on its own motion to correct errors and remedy omissions in its records in order that they shall speak the truth.” Webb v. Cohen, 280 Mass. 292, 293 (1932). The trial court properly exercised that power in this case. Stamatakis provided the court with evidence that he merely assented to the motion to transfer and that it was not a joint motion. In any event, Metropolitan does not argue that where a party assents to an insurer’s motion to transfer a small claims action to the regular civil docket, the assent itself operates to foreclose an award of legal fees. In its brief, Metropolitan states that whether the transfer occurs as a result of a joint motion or an assented-to motion “is of no import.”
Metropolitan instead argues that §23 is inapplicable because the property damage in this case was not “caused by a motor vehicle.” On this record, however, there exists nothing in the statute’s reference to “any action” that would limit its application to tort actions and not contract actions. As long as property damage is caused by a motor vehicle and Stamatakis recovered an amount due and payable, legal fees are to be awarded. There is no dispute that Stamatakis’ motor vehicle, i.e., property, *178 was damaged, and that the damage occurred when the vehicle in motion struck a barrier causing damage to the vehicle itself.[7]
The judge erred, however, in calculating the amount of attorney’s fees awarded to Stamatakis. Counsel for Stamatakis represented NEBW in its defense of Metropolitan’s third-party claim and NEBW’s cross claims. We have reviewed the bill submitted to the trial judge that is the basis for the exact amount awarded. The bill, itself, demonstrates that certain time periods or services billed were for work associated with only NEBW. Other periods of time were associated with work performed for “clients.” The statute allows recovery of legal fees only for the “unpaid party,” i.e., Stamatakis.[8]
3. NEBW’s argument on its appeal is that the judge erred in finding that it committed an unfair business act. NEBW contends there is no liability because it had no business relationship with Metropolitan. NEBW also states that G.L.c. 93A, §11 requires a loss of money or property to have been incurred in order for there to be liability, and Metropolitan has failed in its proof on this element of its claim.
General Laws c. 93A, §11 provides, in relevant part:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of ... an unfair or deceptive act or practice ... may ... bring an action... for damages....
The cases “regularly emphasize” that to recover under §11, a party “must demonstrate the existence of an unfair or deceptive act or practice, a loss, and the causation of one by the other. See Massachusetts Farm Bureau Fedn., Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722, 730 (1989); Hartford Cas. Ins. Co. v. New Hampshire Ins. *179 Co., 417 Mass. 115, 125 (1994).” Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 321 n.10 (2004). Placing aside for the moment the issue of the sufficiency of the relationship between NEBW and Metropolitan, we conclude that the first two elements of the G.L.c. 93A, §11 claim have been met. Billing for unreasonable charges constitutes an unfair practice. Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999). Legal fees incurred in the defense against payment of unreasonable charges constitute a loss of money. Id. See generally Siegel v. Berkshire Life Ins. Co., 64 Mass. App. Ct. 698, 703 (2005) (“If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person’s rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property.”).[9] The judge properly could have found that the winch in and winch out fees were unreasonable. The trial judge had testimony that Stamatakis drove his vehicle to NEBW’s repair shop and that the journey took five hours. He need not have credited the testimony of NEBWs president that the winch fees were necessary because of mechanical difficulties with the vehicle’s steering.[10]
The remaining issue is that of privity. “Privity is not required to maintain an action under c. 93A §11, ‘so long as the parties are engaged in more than a minor or insignificant business relationship.’” Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 238 (2008), quoting Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct. 545, 551 (1995). In this case, there exists more than a minor or insignificant relationship. A tripartite relationship existed between the insured, the motor vehicle insurer, and the motor vehicle repair shop. NEBW may have looked to Stamatakis for payment, but, as acknowledged by NEBWs president, the real party in interest is Metropolitan. Ultimately, it is Metropolitan that «bears the financial cost of the services provided by NEBW. The trial judge committed no error in determining that NEBW committed an unfair business practice.
Our view that there existed in this case more than a minor or insignificant relationship is also supported by the evidence that Stamatakis signed a repair order that allowed NEBW to negotiate with Metropolitan on his behalf. This right to negotiate is founded on regulations promulgated by the Auto Damage Appraiser Licensing Board. Pursuant to 212 CMR §2.04(1) (6), all repair shops are required to have a licensed appraiser in their employment and, under §2.04(1) (e), the insurer’s appraiser and the repair shop’s appraiser shall work toward an agreement on the estimated cost of the repair of the vehicle. Those regulations and the evidence in this case demonstrate that more than a minor or insignificant relationship existed between NEBW, the motor vehicle repair shop, and Metropolitan, the insurer who ultimately bore the burden of coverage for the damaged vehicle.
Accordingly, the judgment for Metropolitan on its cross claim against NEBW is *180 affirmed. The judgment for Stamatakis against Metropolitan is vacated, and the case is returned to the trial court for a reassessment of the attorney’s fees awarded to Stamatakis pursuant to G.L.c. 218, §23. Judgment for Stamatakis, including the reassessed attorney’s fees, shall be entered against Metropolitan.
So ordered.

 The small claims action was filed on May 26, 2004. The case was entered on the regular civil docket on October 4, 2004. The jury returned a verdict on December 14,2006. The trial judge found for Metropolitan on its unfair business practice claim on April 24,2007. Final judgment entered on April 25,2007. Metropolitan and NEBW filed timely notices of appeal. Neither party timely filed the required filing fee. See Dist/Mun. Cts. R. A. D. A., Rules 3 & 4. The docket reflects that, although the trial transcript was received on February 23, 2009, the parties were not notified that it had been received until December 20, 2010.

 On direct examination, Stamatakis testified that the trip took a “couple of hours.”

 In May, 2004, Stamatakis obtained actual value figures for similar vehicles from the Internet site “autotrader.com.”

 Stamatakis testified at trial that he did not remove the vehicle and it remained at NEBW. At some point, NEBW increased its daily vehicle storage rate to $75.00 per day. The daily storage fee is waived by NEBW if NEBW repairs the vehicle.

 Stamatakis’ “statement of small claims” did not identify these costs as costs sought to be recovered. In closing argument, Stamatakis’ counsel informed the jury that the total amount of NEBW’s bill, which included these costs, was being sought as damages.

 In this case, a copy of the motor vehicle insurance agreement executed between Stamatakis and Metropolitan is not included in the record. General Laws c. 218, §23 was added as part of St. 1976, c. 266, titled An Act Relative to Motor Vehicle Insurance. The term “property damage” is not defined. Metropolitan has not argued that the term reflects its use in G.L.c. 90, §340, amended as part of c. 266, which requires every motor vehicle policy to provide coverage for property damage. Under §340, property damage refers to “injury to or destruction of property of others.” Under the same section, the Legislature requires insurers to offer optional “collision coverage.” It specifically defines the term “collision coverage” as coverage “for direct and accidental loss of or damage to the insured motor vehicle.” In the absence of the insurance agreement, we do not know under what provision the contract claim was presented, or how the term “property damage” may have been defined or used.

 At oral argument, we raised the issue of whether under G.L.c. 218, §23, attorney’s fees are limited to those fees incurred that relate solely to Stamatakis’ “property damage” claim. Because this action is returned for a hearing on the issue of reasonable attorney’s fees, the issue can be further developed at the hearing. We do note, however, that circumstances may be such that the apportionment of legal work may not be feasible. See, e.g., Castricone v. Mical, 74 Mass. App. Ct. 591, 604 (2009).

 The trial judge awarded nominal damages for what he found to be NEBWs violation of G.Lc. 93A §11, and then trebled those damages upon his determination that the statutory violation was wilful and knowing. The award of punitive damages is not before this Division.

 NEBW did not request the trial judge to make findings of fact. See Mass. R. Civ. E, Rule 52(c).